Good morning. May it please the Court. My name is Christopher Winter and I represent Appellant Rosemere Neighborhood Association. I'd like to reserve three minutes for rebuttal if I could this morning. Your Honors, this case involves the Voluntary Cessation Doctrine and its application to the actions of an agency that has demonstrated a pattern and practice of unlawful delay in responding to citizen requests for assistance. Rosemere Neighborhood Association filed its initial complaint of retaliation under Title VI of the Civil Rights Act on December 13, 2003. EPA was required by the rules to issue its findings within approximately 205 days. After two rounds of litigation seeking to enforce the regulatory timelines, EPA finally issued its findings on April 30, 2007, almost three and a half years after the complaint was filed. EPA now seeks to dismiss the most recent complaint filed by RNA as moot. I'd like to address three main issues with the Court today. First, I'd like to discuss the burden of proof and to clarify the heavy burden that EPA bears in seeking to dismiss the case as moot. Second, I'd like to discuss the lack of evidence supporting EPA's effort to carry its heavy burden. And third, I'll discuss the specific relief requested by RNA in this case to demonstrate how the Court can provide effective relief to remedy EPA's well-established pattern of unlawful delay. On the first point of the heavy burden of proof, the Supreme Court and this Court have long held that voluntary cessation of a challenge practice does not render a case moot. May I jump ahead to a point, if you don't mind? Sure. The District Court focused on the professed intent for Rosemary to file a new action and concluded that although there was an affidavit in the record indicating that Rosemary might pursue an action in the future, the District Court felt it was telling that that had happened some years before no action had been taken and therefore the District Court considered it unlikely that this event would recur. How do you respond to that? I have two responses. I think the first response goes to the standard of review. This is a motion to dismiss pleading, and so our position is the Court should have viewed the evidence submitted by Rosemary in the light most favorable to the non-moving party. On that point, I think the District Court went too far in inferring some lack of credibility on the part of Rosemary where EPA had not presented any other information. On the second point, which I think to Rosemary is more important, is that there is no reason for Rosemary to go back and seek assistance at this point from EPA. What they have found in their many years of experience is that EPA simply ignores Title VI complaints as it did with every single complaint filed in 2006 and 2007 from around the country, and what Rosemary is trying to do is trying to seek a resolution to the broken Title VI program. What are you saying? What are you saying? That you really don't know whether Rosemary will file another complaint? No, Your Honor. What we have said is that if Rosemary can get the certainty that EPA will respond to complaints in accordance with the timelines, that Rosemary then can make a decision as an organization to dedicate resources to pursue that resolution. I think this is part of Judge Thomas's question is, in other words, you made an assertion in response to the motion to dismiss for mootness, right, that yes, indeed, you know, we, Rosemary, we intend, you know, to file another action to pursue our remedies. I think the question, part of the question is, well, do you have to, in terms of the burden of proof, do you have to make some showing aside from, I'll call it the mere assertion that you intend to exercise your rights, in other words, do the cases place upon you a greater obligation than just saying, yes, I intend to pursue my rights to file another complaint? Your Honor, we would ask that the court look at the case of Porter v. Bowen, which was from 2007. Porter? Yes. Go ahead. Porter v. Bowen. And we believe this case is directly on point. It's at 496 F3rd 1009. In that case, it was about enforcement of members of the public who were set up vote swapping websites. In this case, a voluntary cessation was before the court. And in that case, the plaintiff stated that they had an intent to establish vote swapping websites in the future. And they submitted a declaration to the court saying if we will not be prosecuted for doing so, we will establish vote swapping websites in the future. And so the issue of how to establish a future intent. That's somewhat different from what you're saying today. What you're saying today is if relief is granted, then you will decide whether or not to pursue actions. That's different from saying you will pursue actions if we grant relief or if the district court grants relief. And that's a difference, I think, between this case and Porter. You would say it's insignificant. The other side may say it's significant. Yes, well, it's the parties in Porter stated that they had an intent to file or an intent to set up a vote swapping website in the future. And I believe what the declaration here that we submitted in the allegation said, RNA had an intent to pursue Title VI remedies in the future. I think it's not possible to prove with a certainty what's going to happen in the future. But both Rosemere and the parties in Porter, I believe, stated they have an intent to continue that conduct in the future. So, again, Your Honors, we would ask that the court look at that case. EPA, in its answering brief, did not cite to Porter, did not make an effort to distinguish Porter from the case we have at hand. And so there's little else that Rosemere can do other than to submit well-pled allegations and to submit a declaration saying that it intends to. File another complaint. It could file another complaint. But, Your Honor, if Rosemere filed another complaint, it would dedicate the resources. No, I understand that. There is something else you can do. Yes, and so the other thing that I would like to discuss with the court is that the fundamental problems in the community have not been addressed by EPA. And so in the Lucky v. EPA case that EPA is relying on, EPA was able to demonstrate mootness because EPA had gone into a community in which the community was cited at a toxic site and had relocated all of the citizens, had purchased their property and moved them to a new site in which they did not have to deal with the same problem. And in that case, EPA was able to show, well, the citizens won't have any need to come back to us for assistance. We've removed them. In this case, the fundamental underlying problems are that a poor community has not been hooked up to a sewer system and stormwater carries raw sewage into their neighborhood. This is what triggered the original problem. EPA has not stepped in to fix that problem for Rosemere. And so this is fundamentally a different issue than we have in Lucky. And because those problems persist to this day, RNA has every reason to continue its anti-discrimination work and its advocacy work on behalf of its local community. And it has done so consistently from the time it filed this case up until the present time. And it will return to the Title VI process as one of the tools to address that discrimination if it can get some certainty that the Title VI process will work for the local community as it's supposed to work. But at this point, all we have is a long, long record of EPA delaying and delaying and delaying on these Title VI complaints. Every single one in 2006 and 2007, EPA missed its deadlines across the entire country. So RNA reasonably expects if it invests its resources in this process again, it's going to get the exact same treatment that every other citizen group around the country has received from EPA on these exact same type of complaints. I think we have your argument at hand. Do you want to save us some time for a bottle? You have about six minutes left. I would just like to make one more point if I could, Your Honor. And that is on the issue of declaratory relief. And I think the questions from the panel were getting towards prospective injunctive relief. But I think there's a very concrete role in this case for declaratory relief, which can also provide effective relief to remedy the violations that we have seen in this case. And we would ask that the Court look at Forest Guardians v. Johans at 450 F3rd 455, where the Court stated that a declaratory judgment could help to remedy the effects and to ensure that similar violations would not occur in the future. So even a declaratory judgment is future-looking in its effects. And in this case, there has never been a declaration from a court that this practice of EPA, of ignoring these citizen complaints and delaying and delaying, is unlawful. And for the first time, to get a declaration and declaratory judgment that that is unlawful practice would go towards preventing recurring violations in the future and would help to remedy the impacts of the violations that Rosenberg has felt for these last many years. With that, I'll reserve my time for rebuttal. Thank you. Thank you, counsel. Ms. Cohen. Good morning, Your Honors. May it please the Court, my name is Rebecca Cohen, and I'm Assistant United States Attorney for the Western District of Washington, here today representing the Environmental Protection Agency. The District Court properly dismissed Rosenberg's claims for two related but independent reasons, each of which compelled the dismissal. First, Rosenberg's claims are moot because the agency action that Rosenberg sought to compel was already provided by the EPA when its Office of Civil Rights issued the investigative report. The only question then, and what we're really here about today, is whether the voluntary cessation exception to the mootness doctrine applies. And the government respectfully submits, Your Honors, that it does not. We do agree with Rosenberg that the burden in this case is on the defendants to prove voluntary cessation, and as the District Court properly found, it is a heavy burden on the government. But we would submit, Your Honor, that the government has met that burden here. The case is moot because the EPA has shown two things. First, that there's no reasonable expectation that the alleged violation will recur with respect to Rosenberg, the same objecting litigant. And second, that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. And in order to fully understand, I think, why the voluntary cessation doctrine doesn't apply here, I think it's helpful to look at the Supreme Court's... I don't see any... I don't see the government contesting that at any level. I don't know that we would concede it. I don't know that it's a relevant fact that was looked at below. I would certainly concede that after the government was sued is when the agency action that was sought was issued. Sued repeatedly? Sued on two different occasions, yes, Your Honor. It's a pretty sorry record, isn't it, for the EPA? I would certainly concede... The discovery shows that. I'm not blaming, you know, the U.S. Attorney, but for the EPA doesn't, you know, is not seem to be making any effort at all to comply with the statute. And that's why, you know, it's hard to... It's against that background that we have to assess your arguments about, you know, whether the voluntary cessation doctrine applies. I would certainly concede that there were numerous delays in this case. I can certainly concede that it would be frustrating for a group like Rosemere to have to deal with those delays. Well, in this case, the agency basically went 0 for 2006 and 0 for 2007. It's the first day of the Mariners, but, I mean, that's not good at any average. Not a single case nationwide in two years got processed timely. Not one. Are you here to declare that EPA is going to reform? I'm not here to declare that. That's not something that's really been an issue. What I'm here to say is I don't think that that issue is relevant as unsatisfactory as that might seem to Rosemere, and I do understand that it's frustrating. I would submit, though, counsel repeatedly said that these complaints were ignored, and I don't think that's the evidence. Certainly there's plenty of evidence that the complaints were not processed in accordance with the timelines set out in the regulations, and there's ample evidence on the record about staffing issues and resource issues for the delay, but I don't think it's fair to characterize the complaints as being completely ignored. They are saying they've still got raw sewage around. They are saying that, Your Honor. I think what's important to realize here, though, is that this case, this case that was filed by Rosemere, this district court litigation is not about sewage. It's not about systematic problems at the EPA. It's about one discrete inaction that Rosemere alleged the EPA failed to take or one action that the EPA failed to take, and that discrete alleged wrong that was alleged in this case was the failure to issue an investigative report in accordance with the timelines. It was a timing issue. It has nothing to do with the underlying sewage issues. It's a timing issue. If this were a single isolated event, it would be one thing, but what confidence can you give Rosemere that if they filed a complaint tomorrow, that EPA would be able to comply with the time deadlines? You can't as you stand here today, can you? I can't, but I think that we need to keep in mind that Rosemere's Why isn't that important in terms of deciding whether this case is moot or not? They say they would like to file a new suit. They have the same excuse you do. They don't have the resources. They're not going to file a complaint unless they have some reasonable assurance you're going to act on, and you say we can't give you any assurance we're going to act on because of resources. What assurance can you give them today or us? I think the thing that we need to keep in mind in terms of assurances and future actions is that the claim here is under the EPA, under Section 706.1 of the EPA for unreasonable delay, and under that framework a court can evaluate whether there's been an unreasonable delay until there actually has been a delay and there's something to evaluate, essentially until there's a ripe claim. And what Rosemere is looking for essentially is to be put in a better situation than other complaining parties across the nation. They're asking for prospective relief, ordering the EPA to process their complaints in a timely manner or in accordance with the timelines and the regulations in the future. Essentially they want to be put in a higher status than everybody else who's already waiting. Compliance with the law, counsel. So complying with the law puts them in a much better position than other people? Everybody's entitled to your compliance with the law, aren't they? Or your agency, not you, it's the agency you represent. I think one thing to keep in mind is that under the EPA, there's not a violation the minute you hit those timelines and they're not met. The timelines say that the EPA needs to process the complaints in a certain timeframe. And so in this step, they were supposed to issue an investigative report within 180 days. It's not the case, though, that there's automatically a violation of the EPA the minute you hit day 181 because there needs to be an analysis by the court as to whether there was an unreasonable delay. And certainly there could be situations where even though the investigative report isn't issued within 180 days, the court finds that the delay is reasonable based on the facts and circumstances of that case. I don't understand what you're arguing because we're not talking here about a few days tardiness, right? In this case, we're not. And, you know, and then as Judge Thomas said, the record shows that, you know, time and time and time again, the EPA hasn't met the deadline. So we're not talking about, you know, an occasional negligent lapse or, you know, a few days later here, a few days later. We're talking about sort of a systematic ignoring of the regulatory mandate. I mean, how much clearer of a case can be made? The problem is, Your Honor, that the relief the district court could provide was – the district court had limited jurisdiction under the EPA to do what the EPA allowed it to do. And what the EPA allowed it to do was to compel agency action that was unreasonably delayed. And we've cited a number – That really gets to the next question, you know, or the related question. As you know, Mr. Warner just argued here, the plaintiff's wanted a declaratory judgment, right? Is that authorized under the EPA in your view? A declaratory judgment that the agency has the obligation to comply with the law, right? In this case, I would submit that a declaratory judgment is not allowed under the EPA because the claims are moot. And I would distinguish the Forest Guardians case that the plaintiff has relied on because in Forest Guardians, you had a situation where the Forest Service, excuse me, was under a continuing obligation on a yearly basis to confer with other agencies about specific issues. They hadn't done that at the year in question, although after the litigation was filed, they did. And so then that specific claim, the government argued, was moot because that consultation had occurred. And the plaintiff said, no, we want a declaratory judgment that this consultation was required and needs to occur. And the district court, although the district court dismissed the case, I believe this circuit reversed because they said it's not moot. There is some meaning to that declaratory judgment because there is this recurring annual obligation that the Forest Service has to go back and consult with these other agencies, so that means something in the future. You know, I would submit that the purpose of a declaratory judgment is to frame the legal obligations of the parties in a way that means something moving forward. Here it wouldn't mean anything moving forward. It would just be a declaratory judgment that there was an unreasonable delay in this case with the processing of this complaint. That wouldn't say anything about future processing of other complaints that haven't even yet been filed. And as of right now, there is no unreasonable delay in those complaints. One, there's no complaints. But two, even if there were complaints pending, there's no delay in those complaints yet. And until there is that delay, there's nothing right. But what you're arguing to us is to say we want the right to delay as long as we want to, and we're going to force the plaintiffs to sue us. And then once we get the suit and they've gone to the expense of hiring a lawyer, filing the suit, going to federal district court, then we can rush in with an investigative report and make each and every one of these cases moot. And we get to continue operating that way for the foreseeable future. That's basically what you're asking us to endorse, right? Maybe you're inviting us to give a very broad declaratory judgment saying EPA has got to do it in all cases. So we won't be giving just advantage to Rosemary. Well, I would submit, Your Honor, that as Judge Settle said in his order below, that would essentially be providing relief to other groups that aren't even parties to this litigation. And that's not something that this court could do. I would take care of your problem of giving this plaintiff a favorable treatment, according to you. You don't have a case, Counselor. I do, Your Honor. And I think the real problem here is that the wrongful conduct needs to be viewed in light of what was pled here. And there was one alleged wrong, and that was the delay of this complaint. Right. But if we just take the four corners of the complaint instead of the broader problem, if you will, Rosemary submitted an affidavit that says we'd like to file another complaint. The district court said, I don't believe it. How can the district court do that on a motion to dismiss? Actually, I think it's a little more complicated than that in terms of what the district – I think there are circumstances. Well, it's been a while, so I don't believe you. And without any discovery, without any testimony, without any further action by the court, the court just dismissed it, saying essentially, I don't believe this affidavit. I don't think a district court can do that. If that was the only basis for granting the dismissal, I would agree with the court that there is a problem. Here, I think, though, it's useful to look at what the Supreme Court said when it was talking about why the voluntary cessation exception makes sense and the rationale for that exception in the first place. And they said that they need the rationale because without it, courts could be compelled to leave the defendant free to return to his old ways. And that's a quote from the Laid Law decision. And why are we leaving the agency free to return to its old ways here? Well, I think the distinction is that in Laid Law and the cases that Rosemary has relied upon, you're looking at a challenge to an actual policy of the government. And you're looking at situations where during the course of the litigation, the defendant chose voluntarily to suspend its use of that policy in order, arguably, to just boot up the case. But once the case is over, the defendant can just return to its old ways freely and can go back to implementing that policy because nothing's changed. There's no underlying action that has stopped the policy from taking effect. Here, though, we don't have a policy at issue. We have one discrete inaction. And because that inaction is now over, there's nothing for the EPA to return to. It's very different than in Porter where you have the government essentially shutting down these vote swapping websites. They then say, we're not going to shut them down anymore during the litigation, and so it's moot. And the court says, no, no, no, it's not moot because there's nothing, as soon as this litigation is over, that prevents California from going back to following that policy again. And if the policy itself that was challenged in the first place, here we don't have a policy. We don't have a de facto policy, whether it's caused by budgetary constraints or otherwise. There's a de facto policy of not processing these complaints in a timely manner. So you've been unable to give today, and you've been honest, candid, saying, I can't guarantee the agency's not going to do the same thing in the future. It presents us with a problem. I do think, though, the one thing to distinguish is that here the stated policy of the EPA is to follow the time guidelines in the regulations. They're their own regulations. They wrote those time guidelines, and there's no evidence that they aren't trying to meet them. There's certainly evidence that they're not meeting them, but their policy is to meet the guidelines, just like the policy that was at issue in Porter was to shut down these vote swapping websites. And here you really need to look under the EPA for unreasonable delay claims on a case-by-case basis to see whether the EPA is actually unreasonably delaying. So what's the government's position on what constitutes an unreasonable delay? Well, I certainly don't think that it's automatic. It's not a day under anyone. One year out? I don't think it's that black and white, Your Honor. Unfortunately, I think in each case the court needs to look at the facts of that case. Five years? I really can't give a number. I suppose that there could be cases where the issues are so big and the investigation is so large that it could be potentially multiple years. I'm not saying that's the case here. I don't know. The facts aren't on the record here. But I think my point would be that in every case the court needs to do a case-specific analysis and look at the resources, look at what has been done in that case to determine whether that delay is unreasonable. And that needs to happen each time. And that's why broader prospective relief doesn't make sense under the EPA. So why don't you think the delay was unreasonable in this case when it was a year and a half and it took a lawsuit before the agency started? You know, Your Honor, I actually wouldn't say that the delay in this case was or was not unreasonable. That's not something that was reached. The court didn't get to the merits and we didn't brief it on the merits. We really were just looking at the jurisdictional mootness argument. And I really honestly can't make a statement today as to the unreasonableness of that. Any further questions for the government? Thank you much for your argument. Thank you, Your Honors. Your Honors, I'd just like to touch briefly on two issues. First, there was an issue of was there a policy at the agency level about compliance with the timelines? And I think that's actually an important issue because what we learned during discovery is that the agency had a draft set of policies that spoke to the pre-investigation stage, which was before they accepted the complaint for investigation. They originally told us they had a policy, a formal policy, that instructed their investigators how to comply with this 180-day timeline that's at issue in this case. When we got in discovery, what we learned is that there actually was no policy. They were mistaken when they told us that. So this isn't kind of an abstract policy that we were talking about. There was actually a draft policy that got up to the stage of accepting the complaint for investigation, and that was not final and it was not implemented at the agency to help the investigators. There was, and to my knowledge, still is no policy that the agency has implemented to help its investigators understand and meet the timelines. But it's still, as you presented, somewhat of an abstract problem because we said we need a concrete controversy, and you faulted the government for having the excuse of no budget, but you offer the same excuse to us. We can't make this case unmoot, if you will, or ripe because we don't have the money. Isn't that what you're saying? So on the ripeness issue, I think the ripeness issue is clear. The case arose based on previous facts, and it was ripe at the time it was filed. So really what we're talking about is the relief. And so the ripeness issue, I think, goes to the original claim, and the mootness issue goes to whether now the relief can still be effectively granted to the plaintiffs. Let's assume for the sake of argument that we directed the district court to grant a declaratory judgment that the delay in this case was unreasonable. What does that get you? So I think what that gets us is it improves Rosamere's situation because it gives them more certainty that they can go back and rely on the fact that this is not going to happen again by EPA, and it's also a declaration that this was unlawful activity. And I think that's critical for its community to know that what EPA did here was unlawful, and we still don't have that declaration from the court. And without that, Rosamere does not know whether EPA can continue this practice over and over again, repeatedly, as it's done. So we need a declaration that this is unlawful. The other thing that I would like to correct part of the discussion of what the claims are. 706-1 has two separate types of claims. It's unreasonably delayed or unlawfully withheld. And so I don't want the record to show that this is necessarily an unreasonably delayed type of argument. It may be, but the unlawfully withheld piece of 706-1 goes towards when there are strict timelines in place for the court to review. And so in this case, what was unlawfully withheld? You mean a ruling? In this case, what was unlawfully withheld was the agency's – first it was the agency's decision to accept or deny the complaint, and then second it was the agency's preliminary findings on the investigation of the complaint. And so there are very – there are concrete timelines. It's 20 days to accept a complaint for investigation and 180 days to produce a report. So it's not a case where Congress provides or the agency has an obligation to take an action but not within a specific timeline. And so I think those are the unreasonably delayed claims. This is unlawfully withheld because there were very concrete timelines. And I think the question of relief, then the district court could weigh, okay, well how do we bring the agency into compliance and what schedule do we set up? But in terms of establishing liability and a violation, I think this is unlawfully withheld as opposed to unreasonably delayed. So unless the court has any other questions, that's all I have for rebuttal. Any further questions? No. Thank you both for your arguments. The case just heard will be submitted for decision. And we'll proceed to the next case on the oral argument calendar for this morning, United States v. Cott. Thank you.
judges: Fletcher B. , Tashima, Thomas